Larry CAMPBELL, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 88–152.

Supreme Court of Wyoming.

April 11, 1989.

Public Defender Program: Leonard D. Munker, State Public Defender, Steven E. Weerts, Appellate Counsel, and Jacalyn Bachlet, Student Intern, Cheyenne, for appellant.

Larry Campbell, pro se.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Gerald P. Luckhaupt, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and LANGDON, District Judge.

GOLDEN, Justice.

Petitioner Larry Campbell appeals the district court's denial of his amended petition for post-conviction relief. In that amended petition he raises the following issues:

1. Petitioner was denied his Sixth Amendment right to have compulsory process for obtaining witness (sic) in his favor, Debbie (Flagg) Tayon, Lori Kohl, Teresa McConnell, and Danny LaFluer, which denied him a right to present his defense and denied Petitioner a fair trial.

2. Defense counsel's decision not to call witnesses, Debbie (Flagg) Tayon, Lori Kohl, Teresa McConnell, and Danny LaFluer, requested by Petitioner constituted ineffective assistance of counsel in violation of U.S. Constitutional Amendments VI and XIV and Wyoming's Constitution, Article I, Sub. Sec. 10.

We affirm.

The facts of this case are set forth in *Campbell v. State*, 728 P.2d 628 (Wyo. 1986), which affirmed Campbell's conviction on one count of first degree sexual assault. In that direct appeal Campbell raised the following issue:

Whether defense counsel's failure to call witnesses in appellant's behalf denied appellant of effective assistance of counsel.

*Id.* After reviewing that issue in light of the record and applicable case law this court held unanimously that Campbell had not shown a denial of effective assistance of counsel. *Id.* at 630.

After his direct appeal was affirmed, Campbell petitioned the district court for post-conviction relief under W.S. 7–14–101 through 7–14–108 (June 1987 Repl.),[1] and for permission to proceed in forma pauperis. In conformity with this court's opinions in *Alberts v. State*, 745 P.2d 898, 901 (Wyo. 1987); and *Long v. State*, 745 P.2d 547, 552 (Wyo.1987), the district court granted the

---

1. Some of these statutes have since been amended. See W.S. 7–14–101 through 7–14–108 (Cum. Supp.1988).

motion to proceed *in forma pauperis* and appointed counsel from the Public Defender's office to advise Campbell in his post-conviction efforts on February 5, 1988. Campbell filed a motion to amend his original petition on March 7, 1988, and that motion was granted on March 28, 1988. On April 5, 1988, after receiving assistance from appointed counsel, Campbell filed his amended petition for post-conviction relief raising the two issues set out above and an affidavit in support of that amended petition. Three days later, the state filed a motion to dismiss the amended petition in response. One additional affidavit in support of Campbell's amended petition was filed on April 13, 1988. A hearing on the amended petition was held in the district court on April 15, 1988; Campbell was represented by appointed counsel at that hearing. On April 26, 1988, the district court entered an order granting the state's motion to dismiss Campbell's amended petition, thereby denying Campbell post-conviction relief. This appeal followed. Campbell was represented in this appeal by yet another attorney from the Public Defender's office and he filed a pro se brief on appeal and a pro se reply brief as well.

In *Cutbirth v. State*, 751 P.2d 1257, 1261 (Wyo.1988), this court established a rule of procedural waiver in post-conviction appeals similar to the rule for procedural waiver in force in the federal courts. In *Cutbirth*, this court specifically stated:

This court has taken a disciplined approach to post-conviction relief, pointing out that it is not a substitute for the right of review upon appeal from a conviction, nor is it to be treated as an appeal. *Pote v. State*, Wyo., 733 P.2d 1018 (1987); *Hoggatt v. State*, Wyo., 606 P.2d 718 (1980); *Johnson v. State*, Wyo., 592 P.2d 285, cert. denied, 442 U.S. 932, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *Munoz v. Maschner*, Wyo., 590 P.2d 1352 (1979). Questions which may be raised by motion for post-conviction relief are limited to those of constitutional magnitude which manifest a miscarriage of justice. *Wright v. State*, Wyo., 718 P.2d 35 (1986); *Hoggatt v. State*, supra. Those issues which could have been

presented on appeal are not open to challenge by a motion for post-conviction relief because they are foreclosed by the doctrine of res judicata. *Wright v. State*, supra; *Hoggatt v. State*, supra; *Munoz v. Maschner*, supra.

The issues Campbell raised in his amended petition were presented to the district court with the aid of appointed counsel; that appointed counsel was not the same attorney that assisted Campbell in either his trial or in his direct appeal. Campbell was allowed to amend his original petition for post-conviction relief and to further support it with affidavits. After the state filed its motion to dismiss, the district court held a hearing on Campbell's petition, and after reviewing Campbell's brief and carefully considering the arguments of his counsel, denied the amended petition finding the issues it raised to have been disposed of in the direct appeal or otherwise procedurally waived.

Campbell had a fair opportunity to challenge his conviction under the post-conviction relief statutes and the district court denied his amended petition finding the issues it raised to be procedurally barred under Wyoming law. See *Harris v. Reed*, — U.S. —, —, 109 S.Ct. 1038, 1043–44, 103 L.Ed.2d 308, 316–19 (1989). We defer to the district court's decision.

Affirmed.

URBIGKIT, Justice, specially concurring and dissenting.

It is their perception of a system that provides fairness and due process, and not primarily achievement of acquittal nor imposition of conviction, that determines the attitudes of the criminally accused toward the justice delivery system and serves to establish rehabilitation as a purpose rather than retribution as an infliction.

For all men strive to grasp what they do not know, while some strive to grasp what they already know; and all strive to discredit what they do not excel in, while none strive to discredit what they do excel in. This is why there is chaos. Chaung-tzu.

To understand how that psychological constant applies to appellant Larry Camp-

bell (Campbell), age 19 at time of arrest, born out of wedlock to an Indian mother and a disappearing Polish father, requires retracing his exposure to the adjudication of guilt which he then and since has constantly, but ineffectively, denied.

At trial, Campbell was not provided any realistic defense; without a single witness or any other defending favor except ineffective cross-examination of the victim and other eyewitness and final argument implausibly texted in unattainable reasonable doubt; leaving him without evidence which even implied why not to convict. There is an undeniable thesis in criminal defense that if you cannot—don't try; but look for the best plea bargain possible. However, Campbell contends that a defense could have been made, and it is the denial of that opportunity to try, as initially rejected, which now continues as his purpose in appeal.

At this juncture, Campbell's appellate complaint to seek fairness, propriety and due process again arrives following rejected conviction appeal and denied post-conviction relief in trial court. Essentially, Campbell challenges a justice system which he alleges to have visited upon him drastic and vicarious punishment without provision for realistic opportunity to defend.

In concurrence with the majority, I agree on res judicata for issues decided in Campbell's first appeal. However, I reject procedural default to hide other claims which have never been addressed within our substantive responsibility for the validity of the justice delivery system and the propriety of according constitutional due process and equal protection to Campbell. To analyze my distress and Campbell's contentions, we need to follow what happened down the path of this case since the guilty verdict was rendered.

Immediately following conviction, Campbell, first pro se and then through counsel, filed a motion for new trial which the counsel-prepared document formally addressed pursuant to W.R.Cr.P. 34:

1) Ineffective assistance of counsel during Trial which violates the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Wyoming Constitution.

2) Biased and prejudicial jurors which violates the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Wyoming Constitution.

3) Newly discovered evidence.

4) Defendant's failure to testify in his own behalf which violates the Fifth Amendment to the United States Constitution and Article I, Section 11 of the Wyoming Constitution.

The portion of the motion addressing the question of newly discovered evidence was deleted by oral statement of counsel at argument on the motion for new trial, after which the motion itself was orally denied and the trial court then moved on to sentencing. No written denial order was entered.

First appeal followed, and of the three issues included in the denied motion for new trial, the only issue presented on appeal, through the continued representation of the office of the public defender, was whether "defense counsel's decision not to call witnesses requested by appellant constituted ineffective assistance of counsel in violation of the United States Const. Amends. 6 and 14 and Wyo. Const. Art. 1, § 10;" or, as otherwise stated in the statement of the issues, "whether defense counsel's failure to call witnesses in appellant's behalf denied appellant of effective assistance of counsel."

This court, as then called to addressed that single question, affirmed in *Campbell v. State*, 728 P.2d 628 (Wyo.1986). Sentenced to a term of seven to twenty years without credit for time in jail and after two denied requests for sentence reduction, Campbell initiated efforts for post-conviction relief. First filed pro se on January 28, 1988, with some ingenuity, Campbell presented a claim of denied compulsory process for obtaining witnesses. As rephrased and constitutionally related, this was the same argument presented and denied in the first appeal. By Campbell's request, the office of the public defender was appointed for his representation, which office then filed an amended petition with a

similarly stated basis to which Campbell's affidavit was attached. It is unexplained in this record, but the amended petition does not include all of the issues specifically addressed in the supporting affidavit prepared and signed by Campbell. In addition to re-attack on the non-called third-party witnesses, the affidavit stated:

Larry Campbell, being duly sworn upon his oath, deposes and says:

### I.

He is the above-named Defendant who has filed a Petition for Post–Conviction Relief in the District Court of the Sixth Judicial District, in and for Campbell County, State of Wyoming.

### II.

He was represented by Pat O'Connell, who would not allow him to testify at his trial.

\* \* \* \* \* \*

### VIII.

The failure to permit him to testify and the failure to call the witnesses on his behalf denied Defendant's rights.

Upon consideration of the motions to dismiss filed in objection to post-conviction relief, the trial court considered and arrived in ruling:

\* \* \* In Petitioner's affidavit he also asserts that he was not permitted to testify on his own behalf by his trial counsel; this ground is not raised as a claim for relief in the original or amended petition.

\* \* \* \* \* \*

\* \* \* That Petitioner's claim that he was not permitted to testify by his trial counsel, raised in his affidavit but not in his petition or amended petition, is totally without merit and is directly refuted by the record. *Campbell,* supra, at 630.[1]

These events, as developed within the felony trial for Campbell, are explicitly re-lated in the trial transcript as an in camera session in the presence of Campbell:

THE COURT: Mr. O'Connell [attorney for Campbell], you had some matters you wanted to discuss outside the presence of the jury. Do you want to do it in the courtroom or in the office?

MR. O'CONNELL: I can do them right here in the courtroom, Your Honor.

THE COURT: Fine.

MR. O'CONNELL: Your Honor, essentially what it is is that I've advised Mr. Campbell that it is his decision whether or not to testify. I have made my recommendations, and I've—what I recommended was that he not testify in this matter.

I advised him of the consequences of testifying as far as being cross-examined by the prosecutor and, essentially, told him the consequences of testifying.

Over my objections, Mr. Campbell still wants to testify in this matter, and, so, he will be called as a defense witness.

THE COURT: There were some 404(b) problems raised previously, and, Mr. Rose, the State was proffering some testimony from Mrs. Frontado about some events that occurred.

Was that subsequent to this? What was that?

What were you wanting to—what evidence were you going to present—

MR. ROSE: Your Honor, the—

THE COURT: —from Mrs. Frontado—or Miss Frontado?

MR. ROSE: I initially wished to present evidence that during the period of the assault on Mrs. McGuire the defendant also had run into the bedroom while April and Shannon were in the bedroom and that he sexually assaulted April while she was there.

THE COURT: In what way?

MR. ROSE: He—she was sitting on the bed at the time he entered the bedroom. He came in, closed the door behind him, pushed her back on the bed by

---

1. The statement in majority opinion that disposition of the issue in trial court post-conviction relief denial order was based on procedural waiver is factually untrue. The trial court de-termined this issue on the merits and not on a procedural rationalization. Cf. *Harris v. Reed,* — U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

pushing her with his hands, and then he fell on top of her.

And, while he was on top of her in the bedroom, he then held her breast in his hand, touched her breast, and had his groin on top of hers, moved it up and down, and attempted to kiss her while she was on her back on the bed. He had her pinned on the bed.

Eventually, Shannon was able to pull him off of April, at which time he then ran out of the room and back into the bathroom with Tracy.

THE COURT: Okay.

Mr. O'Connell, did you have anything further?

MR. O'CONNELL: No, Your Honor.

THE COURT: Mr. Campbell, I'm going to tell you some things now, and I'm not trying to influence your decision as to whether you want to testify one way or the other.

You have the right to testify or not testify, as you choose. It's probably prudent to follow the advice of your attorney, but you're not required to.

I do want to explain to you some of the—some of the consequences.

If you do testify, I'm sure Mr. O'Connell told you, you'll be subject to cross-examination by Mr. Rose the same as any other witness who testifies in court.

You have to testify under oath, and, if you are untruthful, you will be liable for prosecution for perjury the same as any other witnesses who testify.

I have excluded the evidence that Mr. Rose just talked about about this confrontation that you had with Miss Frontado, and I have no idea what you're going to testify about if you take the stand.

However, I'm sure Mr. O'Connell has advised you that I excluded that evidence from the State's case in chief but I left open the question of whether or not I would let that evidence in in the State's rebuttal case.

What that means, in plain terms, is if you testify and if you testify, for instance, that you did not make any sexual assault upon Mrs. McGuire, then I will have to reconsider the State's motion to introduce the evidence about what happened with Miss Frontado.

And I don't know what my ruling would be on that at this time. It would depend largely on what your testimony was. But I want you to know that that possibility exists.

I also want you to know that you don't have to testify. I will make no remarks to the jury about your testifying or not testifying.

If you decide that you don't want to testify and you want to—you want me to instruct the jury that they are to make no presumption against you because you remain silent, I will instruct the jury to that effect.

I suggest that over the noon hour you consult again with Mr. O'Connell, make your decision as to what you want to do. We'll abide by that decision.

Anything further from the State?

MR. ROSE: Nothing further.

MR. O'CONNELL: I have nothing further, Your Honor.

THE COURT: Court's in recess.

\* \* \* \* \* \*

THE COURT: Okay. Mr. Campbell, I understand that you've changed your mind about testifying.

THE DEFENDANT: Yes.

THE COURT: I hope you didn't do that on the basis of what I said because I want you to understand that whether you testify or not makes absolutely no difference to me. And I don't want you to think that I was putting any pressure on you not to testify because, if you want to, you just do it.

Understood?

THE DEFENDANT: Yeah.

THE COURT: Okay. All I wanted you to do was be aware of the consequences.

Following denial of the motion for post-conviction relief on April 26, 1988, the office of the public defender, through "services" of the defender aid program at the University of Wyoming Law School, filed a brief in behalf of Campbell *which stated*

*the issues presented with supporting argument and stated conclusions:*

### STATEMENT OF THE ISSUES

Issue I

Campbell's appeal of his post-conviction appeal is frivolous and the issue(s) raised res judicata.

Issue II

The United States Constitution does not establish a right to counsel for post-conviction relief and Anders procedures are not required at the post-conviction stage.

Issue III

Counsel should not be appointed when a petitioner chooses to appeal dismissal of a frivolous or unsubstantial post-conviction claim.

\*     \*     \*     \*     \*     \*

### CONCLUSION

First, because Campbell failed to meet his burden establishing that he has been denied a constitutional right or to present a substantial claim, because the issues he brought in his petition for post-conviction relief are res judicata, and because there is little likelihood that calling the witnesses Campbell claims he was denied would have caused a different outcome, there is no merit in Campbell's appeal of dismissal of his petition for post-conviction relief.

Second, because appointment of counsel was not clearly required for appeal after dismissal of a post-conviction appeal by the plain language of the old statute, and because the legislature has expressed its intention to restrict appointment of attorneys on frivolous post-conviction claims, this Court should refuse to expand its Alberts decision to include mandatory appointment of counsel for post-conviction appeals.

The Office of the Public Defender requests that it be released from further obligation in this matter. [Emphasis in original.]

Campbell, in conjunction with advice from other incarcerated prisoners (jailhouse lawyer or lawyers) at the penitentiary, obviously discerned that with assistance like that, he did not need enemies. He tried to do something about this since the brief filed in his behalf attacked his position as frivolous, that an *Anders v. State of Cal.*, 386 U.S. 738, 87 S.Ct. 1396, ·18 L.Ed.2d 493, reh'g denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967) brief was not required (and certainly not provided), and that counsel should not have been appointed, although done with distress to his interest. In any reasoned observation, "he had been had."

Consequently, Campbell, in recognition of the total disaster from the legal assistance which was provided by the public defender, then moved in this court:

COMES NOW the Appellant, Larry Campbell, and requests that the document styled as a "Brief of Appellant" \* \* \* be stricken, appointed counsel be permitted to withdraw, and that leave be granted for Mr. Campbell to submit a proper Brief of Appellant *in propria persona*. The grounds for this motion are as follow[s]:

1. Leonard D. Munker, State Public Defender, was appointed by the Court to represent Larry Campbell in the above-entitled appellate action.

2. Leonard D. Munker submitted a document entitled Brief of Appellant, raising three arguments:

I. Campbell's appeal of his post-conviction appeal is frivolous and the issue(s) raised res judicata

II. The United States Constitution does not establish a right to counsel for post-conviction relief and Anders procedures are not required at the post-conviction stage

III. Counsel should not be appointed when a petitioner chooses to appeal dismissal of a frivolous or unsubstantial post-conviction claim

3. Appellant contends that the "Brief of Appellant" submitted by appointed counsel is not a brief which represents the Appellant's interest. The brief is nothing more than an attempt by Leonard D. Munker to use the space reserved for Mr. Campbell's issues, for Mr. Munk-

er's issues. Appellant maintains that his issues and those raised by Mr. Munker are dissimilar.

4. Mr. Munker asserts that Mr. Campbell's issues are "res judicata" and "frivolous." Mr. Campbell asserts that Mr. Munker has failed in his duty to be loyal to the client and has purposefully ignored Mr. Campbell's meritorious issues. For example, ineffective assistance of counsel at the time of hearing on his petition for post-conviction relief is one meritorious issue which needs to be presented on appeal. Secondary appellate issues involve Mr. Campbell's equal protection and due process claims that he was denied the right to bring forth his viable issues on petition for post-conviction relief.

5. Recently the Wyoming Supreme Court has been provided an opportunity to review a similar equal protection claim. (*Sanchez v. State*, —— U.S. ——, 109 S.Ct. 161, 102 L.Ed.2d 131 (1988)). While Mr. Munker may consider such a claim as "frivolous," the Supreme Court of the United States apparently disagrees.

6. In the context of Mr. Campbell's issues, those raised by Leonard D. Munker within the "Brief of Appellant" are irrelevant to this proceeding. Under the rules this Court is authorized to strike irrelevant matter.

7. The State of Wyoming will not be prejudiced by the granting of this motion. No brief has been submitted by the Appellee. This motion is made in the interest of judicial economy, and in the best interest of justice.

WHEREFORE, Appellant respectfully urges the Court to grant this motion and to strike the entire "Brief of Appellant," relieve appointed counsel from any further obligation in this case, and to enter an order permitting Mr. Campbell to submit a pro se Brief of Appellant. Further, permit Mr. Campbell forty (40) days after counsel is removed and the brief is stricken, in which to submit his Brief of Appellant.

DATED this 30th day of September, 1988.

/s/ _____
Larry Campbell [2]
[Emphasis in original.]

This court granted the motion for leave to file a proper brief, denied the motion to strike the brief filed by the public defender's office and gave time for preparation. The Anders-less brief consequently remained. Stated as issues in the supplemental brief for appellant, as filed and signed pro se by Campbell, were included items:

ARGUMENT I Is the "Brief of Appellant" submitted by the State Public Defender properly considered as part of the instant appeal, or are the following four reasons against inclusion legally sufficient?

Reason 1. The issues raised by the State Public Defender, which question the propriety of appointing counsel on appeal in post-conviction cases, is moot.

Reason 2. The arguments(s) raised by the State Public Defender are prejudicial to Mr. Campbell's cause, and before the Court in violation of the Court's internal operating procedures.

Reason 3. Anders requirements have not been satisfied, and the case at bar is an exemplar of why such procedures must apply.

Reason 4. Counsel's reliance on Pennsylvania v. Finley, cites a case for a proposition it really doesn't stand.

ARGUMENT II Did appointed counsel purposefully deprive appellant of due process of law and effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments of the Constitution, and if so, may the code of professional responsibility be introduced as evidence?

ARGUMENT III By commenting upon appellant's right to remain silent is it fair

---

**2.** It goes without saying that some rather erudite assistance from a non-lawyer prisoner is indicated. For a lesson in sufficiency (or non-sufficiency) of an Anders brief and inadequate performance as a lawyer, attention is directed to the criteria stated in the recent case of *Com. v. Harris,* 553 A.2d 428 (Pa.Super.1989).

to hold that the trial court violated appellant's right to due process of law and to a fair trial?

ARGUMENT IV When the trial court ignored the prosecutor's material and fundamental errors throughout the trial, is such violative of appellant's right to a fair trial?

ARGUMENT V If trial counsel failed to provide effective assistance, is such a violation of the Sixth Amendment of the Constitution of the United States?

ARGUMENT VI May it be reasonably stated that if counsel was ineffective at the time of direct appeal and on petition for post-conviction relief, that such deprived Larry Campbell of his rights under the Fifth, Sixth, and Fourteenth Amendments?

ARGUMENT VII If many errors of law occurred during the trial, direct appeal, on petition for post-conviction relief, and in the instant appeal of the case, is the doctrine of cumulative error properly invoked, and is cumulative error sufficient to require a reversal and dismissal of this cause? [Emphasis in original.]

Where the public defender brief of fifteen pages provided only eight citations, six state and two United States Supreme Court, the Campbell pro se brief included thirty-nine cases, six law reviews and thirteen other authorities in its fifty-three pages of text in first brief and then, as supplemented in reply brief, with twenty-one cited cases and an additional eleven pages. As issues in procedural context, the most vehemently stated and exhaustively related presented the conflict of interest, ineffectiveness and ethical questions relating to the public defender representation. The philosophic issue presented by Campbell, pro se, was the failure of his appellate counsel to assert his innocence; one of the substantive questions addressed the events that caused him not to testify in his defense at trial as he had intended to do.

In conclusion, the Campbell pro se brief stated:

> At the genesis of this brief Larry promised to show how the State Public Defender was simply wrong when he claimed Larry's issues were frivolous.
>
> Unlike most appellate actions, here the Court has seen an astonishing amount of attorney error compounded by yet more attorney error, and aggravated by judicial error. This Court may easily reverse Larry's conviction on the strength of each of the several arguments to this brief, but the one ground which mandates reversal is not, unfortunately, properly argued on appeal—Larry's innocence.[3]

The brief of the State, as at least relating to the subject in a scholarly fashion, characterized the issues as presented:

I. Although appointed counsel complied with the dictates of Anders v. California are such requirements applicable to post-conviction relief proceedings?

II. Is appellant's claim of ineffective assistance of trial counsel barred from review in these proceedings?

III. Are the issues raised by arguments III, IV, V, VI and VII of appellant's pro se brief barred from review because they were not raised in his original or amended petition for post-conviction relief?

IV. Is appellant's claim of ineffective assistance of post-conviction counsel frivolous and not cognizable in this proceeding?

The posture adopted in that response on the singular issue of Campbell's testimony was attacked as first, not included in the original or post-conviction petition, and secondly, as frivolous and without merit. The substantive concerns of the trial court's involvement in the decision of an accused of whether or not to testify was addressed on the merits in the State's brief and resolved by conclusion:

> It was the trial court's duty (as noted by the court (R.A. Vol. I, p. 193, transcript p. 310)) when advised of a conflict be-

---

**3.** Within the record available, Campbell's factual denial of the rape charge has never been changed. His version of the events might not have convinced the jury, but his objective remains as his chance to at least have his position on what did occur somehow presented within due process and equal protection rights of the justice delivery system.

tween Appellant and his counsel to independently explore the consequences of Appellant's decision to waive his right to remain silent with Appellant to insure that the waiver was knowing[ly] and understanding[ly] made.

The academic impurity of this approach is failure to recognize the principle that a defendant has a first right to testify. That right is absolute and predominating. Wyo. Const. art. 1, § 10 states that "[i]n all criminal prosecutions the accused shall have the right to defend in person and by counsel, * * *." As a corollary to that principal right is the option that he does not have to testify. Wyo. Const. art. 1, § 11.

In special concurrence, I agree that this court determined the non-called witness issues in first appeal and that decision is res judicata. I cannot be so sanguine about the subject of pressure applied to Campbell which resulted in his own non-testimony and abdication by him and his attorney of any possible or realistic defense.

For this dissent, I abjure addressing brightline rules of pressure on accused or witnesses to deny their availability to testify. *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). I will not even speculate what this court should say or do in substantive analysis of the Sixth Amendment of the United States Constitution and Wyo. Const. art. 1, § 10 right to defend in person. I dissent from the majority's abdication and would contrarily accord the issue deeply held by Campbell some adjudicative consideration since he was "convinced" not to testify and, as a consequence, was left without any real defense. The irony is that persuasively within this record, Campbell clearly does not consider he was guilty of the crime for which he was convicted despite the strong character of adverse evidence. His apprehension is illustrated by his handwritten letter to the trial court requesting a new trial composed immediately after the adverse jury verdict was entered.

I do not find *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988) decisive here, even though additionally I will never accept its thesis to be otherwise valid or persuasive for constitutional right forfeiture from a procedural default caused by the mistake, inaction or ignorance of counsel. *In this case, the substantive issue was considered and determined by the trial court in the post-conviction relief decision, albeit only pleaded in pro se affidavit in support of the petition.* Since the issue was substantively considered, it is now properly presented in Campbell's own brief as answered by the State and should not be ignored by the majority by conjecture as either not presented or procedurally barred.

Consequently, I defer to the prior decision of this court in *Campbell*, 728 P.2d 628, on the issue considered and determined, but not to this adjudicatory disassociation from the constitutional right of the accused to testify. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, reh'g denied, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985); *Anders*, 386 U.S. 738, 87 S.Ct. 1396; *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed. 2d 539 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. ——, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); and, most recently, *Penson v. Ohio*, —— U.S. ——, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), will certainly not lead this court so far as to deny consideration to Campbell. It would seem that we have apparently learned nothing from *Osborn v. Shillinger*, 861 F.2d 612 (10th Cir.1988) in abjuration of our primary responsibility "to support, obey and defend the Constitution of the United States and the Constitution of this State." The majority opinion again shows that adequate standards for the justice delivery system in Wyoming finds faint favor in most recent time. See prosecutorial misconduct discussion in *Hopkinson v. Shillinger*, 866 F.2d 1185 (10th Cir.1989). In any event, exhaustion of all state remedies is now finished and complete for the examination of any constitutional rights of Campbell to be defended or defend himself. *Castille v. Peoples*, —— U.S. ——, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). See also *Harris v. Reed*, —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

Campbell presents a disturbing thought that, regardless whether he had a good defense to make, he never had a good chance to make any defense. As stated in *Miller v. State,* 237 N.C. 29, 74 S.E.2d 513, 529, cert. denied, 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1360 (1953):

A criminal prosecution is likely to have a tragic ending for the accused if defense attorneys are compelled to make legal bricks without factual straw.

In counterpoint, Campbell could properly restate that:

A criminal prosecution is likely to have a tragic ending for the accused if the factual straw is not ordered and the substance of the bricks of defense is only blue sky.

Consequently, I dissent in denial of any substantive consideration by the majority in this appeal about the decision made by the trial court in post-conviction relief as addressing the constitutional interest of Campbell for a right to defend in original trial. Furthermore, I emphatically reject approval of what was done against him by appointed "appellate representation." Campbell was not even given the opportunity to look for a possible *pathway* between Scyllia and Charybdis. See *Texas Monthly, Inc. v. Bullock,* — U.S. —, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989) (Scalia, J., dissenting).